# United States Court of Appeals
#### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued January 16, 2024     Decided September 6, 2024

No. 22-7171

ESTATE OF YAEL BOTVIN, BY RUSSELL ELLIS, ADMINISTRATOR, ET AL.,
APPELLANTS

v.

HEIDEMAN, NUDELMAN & KALIK, P.C., ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-03186)

*Robert J. Tolchin* argued the cause and filed the briefs for appellants.

*Jason R. Waters* argued the cause and filed the brief for appellees.

Before: KATSAS and PAN, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KATSAS.

KATSAS, *Circuit Judge*: The plaintiffs in this legal-malpractice action are the estate and family members of Yael Botvin, who was killed in 1997 by Hamas suicide bombers. In 2005, the plaintiffs sued the Islamic Republic of Iran for helping Hamas orchestrate the attack. They won large default judgments and recovered about $2.8 million from a United States fund for victims of state-sponsored terrorism. But because it took nearly eight years to obtain the default judgments, the plaintiffs were unable to participate in a 2012 agreement that disbursed to victims of Iranian-sponsored terrorism a trove of Iranian assets seized in the United States. According to the plaintiffs, their recovery would have been much larger had they been able to participate in that agreement.

The plaintiffs sued their former lawyers for malpractice. They allege that the lawyers' negligence delayed their default judgment against Iran and caused them to miss out on the larger settlement. On a motion to dismiss, the district court held the plaintiffs had adequately pleaded that the alleged negligence was a but-for cause of the lower recovery. But in addressing proximate cause, the court held that the plaintiffs had not adequately pleaded the requisite degree of foreseeability. We reverse that decision.

I

On a motion to dismiss for the failure to state a claim, we must accept as true the facts alleged in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). We also may consider court records and other judicially noticeable documents. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

3

A

In 1997, three Hamas suicide bombers blew themselves up in a pedestrian mall in Jerusalem. They killed five people, including fourteen-year-old Yael Botvin, and injured nearly two hundred more. Other victims of the bombing successfully obtained judgments against Iran for sponsoring the attack.

In 2004, Botvin's estate and family hired the law firm of Heideman Nudelman & Kalik, P.C. to do the same. In 2005, the firm filed a complaint against Iran in our district court. Iran never appeared to defend, yet the firm did not obtain a default judgment until July 2012. According to the plaintiffs, attorney negligence caused this long delay.

As originally filed, the complaint raised various state-law tort claims. Although United States courts generally lack jurisdiction over foreign sovereigns, the Foreign Sovereign Immunities Act contained an exception for suits seeking damages for state-sponsored acts of terrorism. 28 U.S.C. § 1605(a)(7) (2004).

After Iran failed to appear, the lawyers moved the district court to enter a default. Because the request should have been made to the clerk of the court, *see* Fed. R. Civ. P. 55(a), the court denied the motion, App'x 98. Only then did the lawyers ask the clerk to enter the default.

Once the clerk did so, the lawyers moved the court for entry of a default judgment, which required them to establish a "right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). The motion proffered no evidence other than findings and conclusions in another case holding Iran liable for the same bombing. The district court held that this evidence did not establish each element of the plaintiffs' individual claims, so it denied the motion without prejudice. *Estate of*

4

*Botvin ex rel. Ellis v. Islamic Republic of Iran*, 510 F. Supp. 2d 101, 102–03 (D.D.C. 2007).

When the lawyers filed the complaint, there was no federal cause of action against foreign sovereigns for injuries caused by state-sponsored terrorism. The FSIA provided subject-matter jurisdiction for such actions, but the actions had to arise under state or foreign law. *See Cicippio-Puleo v. Islamic Republic of Iran,* 353 F.3d 1024, 1027 (D.C. Cir. 2004). In 2008, shortly after the district court denied the first motion for a default judgment, Congress changed the legal landscape. It enacted 28 U.S.C. § 1605A(c), which created a plaintiff-friendly cause of action against foreign sovereigns for supporting terrorism. Because some plaintiffs had incorrectly assumed that the FSIA provided a federal cause of action, Congress allowed any plaintiff who had invoked the Act as the basis for its claim to convert the action into one under the new statute. *See id.* § 1605A(a)(2)(A)(i)(II); *id.* § 1605A note (2)(A) (Prior Actions). Congress also allowed for certain parties who had *not* relied on a federal cause of action to refile their claims under the new law. *Id.* § 1605A notes (2)–(3).

Congress' creation of the federal cause of action gave Botvin's lawyers three options: continue the existing lawsuit under state law, invoke the new federal cause of action in the pending lawsuit, or refile the lawsuit under the federal cause of action. The lawyers attempted both options for teeing up federal claims. In the pending action, they moved the court to convert their state-law causes of action into the federal ones and to enter a default judgment. Simultaneously, they filed a new lawsuit raising federal causes of action. App'x 16–17. Neither strategy bore fruit.

The motion in the existing case was flawed in two respects. First, because the original complaint did not invoke any purported federal cause of action, it could not proceed under 28

5

U.S.C. § 1605A(c). *See Estate of Botvin ex rel. Ellis v. Islamic Republic of Iran*, 604 F. Supp. 2d 22, 25–26 (D.D.C. 2009). Second, the evidence again was insufficient to support a default judgment under state law because the lawyers had submitted unsworn declarations and failed to explain how the evidence related to the Botvins' claims. *Id.* at 24–25. Denying the motion without prejudice, the court requested further briefing on unanswered choice-of-law questions. *Id.* at 26.

The lawyers tried again. They argued that California law should apply because Botvin was born in California before moving to Israel. And they sought entry of a default judgment under California law. But after an intervening decision made clear that Israeli law should apply, *see Oveissi v. Islamic Republic of Iran*, 573 F.3d 835 (D.C. Cir. 2009), the district court again denied the motion without prejudice, and it allowed further briefing on whether Iran was liable to the Botvins under Israeli law, *Estate of Botvin ex rel. Ellis v. Islamic Republic of Iran*, 684 F. Supp. 2d 34, 39–42 (D.D.C. 2010).

The next (fourth) motion for default judgment failed for the same reason. Instead of providing satisfactory analysis under Israeli law, the lawyers primarily tried to relitigate the choice-of-law question. Left again without adequate evidence and argument under the governing legal standards, the district court once more denied the motion without prejudice and again allowed further briefing on liability under Israeli law. *Estate of Botvin ex rel. Ellis v. Islamic Republic of Iran*, 772 F. Supp. 2d 218, 223–32 (D.D.C. 2011).

While the lawyers were attempting to obtain a default judgment in the original case, the parallel case (invoking the new federal cause of action) fared even worse. The lawyers failed to file proof of service. A year passed, and after the lawyers ignored a show-cause order, the district court dismissed the case for lack of prosecution. Order at 1,

6

*Goldberg-Botvin v. Islamic Republic of Iran*, No. 1:08-cv-00503, ECF No. 3 (D.D.C. Apr. 23, 2010).

At long last, the lawyers' fifth motion for default judgment in the original case achieved some limited success. The district court granted the motion in part; in July 2012, it held that Yael Botvin's estate was entitled to $1.7 million. *See Estate of Botvin ex rel. Ellis v. Islamic Republic of Iran*, 873 F. Supp. 2d 232, 246 (D.D.C. 2012). Yet the court found that the evidence for the family's claims still was insufficient. *Id.* at 244–45.

After the court rejected the family's claims, the lawyers filed a new complaint invoking the federal cause of action in section 1605A. Things progressed smoothly this time, and the family obtained a default judgment of nearly $41 million against Iran in April 2013. *Goldberg-Botvin v. Islamic Republic of Iran*, 938 F. Supp. 2d 1, 12 (D.D.C. 2013).

All told, it took the lawyers about eight years to obtain the default judgments. The Botvins' malpractice complaint alleges that without their missteps—including repeated failures to provide sufficient legal arguments and evidence over five default-judgment motions—the judgments could have been obtained years earlier.

B

When it comes to recovering against state sponsors of terrorism, receiving a favorable judgment is the easy part; satisfying the judgment is much harder. Of course, Iran does not voluntarily pay judgments of United States courts holding it liable for acts of terrorism. So, prevailing plaintiffs must find attachable assets to seize in enforcement proceedings. Doing so is difficult because sanctions severely limit Iran's ability to

7

conduct business in the United States. *See*, *e.g.*, 31 C.F.R. §§ 535.201, 535.202. And Iran does not do so visibly.

In 2008, during the Botvin's litigation saga against Iran, other victims discovered that Bank Markazi, Iran's central bank, was secretly holding about $1.9 billion in assets in a United States bank account. Sixteen different groups of plaintiffs, comprising more than 1,000 "victims of Iran-sponsored acts of terrorism," sought to enforce default judgments against the Bank Markazi account. *See Bank Markazi v. Peterson*, 578 U.S. 212, 219 (2016). Citibank, which held the disputed account, filed an interpleader action against all such judgment creditors in 2011. *See id.* at 221 & n.9. Bank Markazi resisted enforcement on various grounds. In June 2012, while the enforcement proceedings were still pending, all claimants against the account agreed to split any proceeds on a pro-rata basis of their compensatory damages. App'x 26. The agreement included only parties who already held judgments against Iran. It thus excluded the Botvin estate (which obtained its judgment in July 2012) and the Botvin family members (who obtained their judgment in April 2013).

Congress then acted to ensure that the parties to the agreement could collect against the bank account. The Iran Threat Reduction and Syria Human Rights Act of 2012 targeted the pending litigation and removed various barriers to enforcement. Pub. L. No. 112-158, § 502, 126 Stat. 1214, 1258–60 (codified at 22 U.S.C. § 8772). After the Supreme Court rejected a constitutional challenge to the law, *see Bank Markazi*, 578 U.S. at 236, the parties to the June 2012 agreement were able to obtain significant partial satisfaction. These plaintiffs, with judgments totaling $3.7 billion in

8

compensatory damages, divvied up the $1.9 billion account on a pro-rata basis. App'x 30–31.

Instead of collecting from the Bank Markazi settlement, the Botvin estate and family partially satisfied their judgments through the United States Victims of State Sponsored Terrorism Fund, which Congress created to provide compensation to certain victims of state-sponsored terrorism. *See* 34 U.S.C. § 20144. Holding compensatory judgments totaling $11.7 million, they collected a total of nearly $2.8 million. App'x 30–31, 264. That is no small number, but it is substantially less than the approximately $6 million the Botvins say they would have received had they been able to participate in the Bank Markazi settlement. *Id.* at 30–31.

The Botvin estate and family sued their law firm and individual lawyers in federal court for malpractice under District of Columbia law. The lawyers moved to dismiss the complaint on the ground that it failed to adequately plead proximate causation and that the allegedly negligent litigation decisions were reasonable exercises of professional discretion.

The district court dismissed the complaint with prejudice. *Estate of Botvin v. Heideman Nudelman & Kalik, P.C.*, No. 1:21-cv-3186, 2022 WL 4482734, at *1 (D.D.C. Sept. 27, 2022). It held that the complaint adequately alleged that attorney errors were a but-for cause of their missing out on a chance to participate in the Bank Markazi settlement. *Id.* at *10–11. But it also held that the complaint did not adequately allege the essential element of proximate causation because, as a matter of law, the claimed injury was not foreseeable. *Id.* at *11–15. Later, the court denied a motion for reconsideration. *See Estate of Botvin v. Heideman Nudelman & Kalik, P.C.*, No. 1:21-cv-3186, 2022 WL 18024714, at *1–3 (D.D.C. Dec. 12, 2022). The Botvin estate and family now appeal the dismissal of their complaint.

9

II

We review *de novo* a dismissal for failure to state a claim. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Like the district court, we must take the facts alleged in the complaint as true and must make all reasonable inferences in favor of the plaintiffs. *Iqbal*, 556 U.S. at 678.

Sitting in diversity, we apply D.C. choice-of-law rules. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496–97 (1941); *Wu v. Stomber*, 750 F.3d 944, 949 (D.C. Cir. 2014). Here, it seems obvious that D.C. choice-of-law rules would require application of D.C. law to the conduct of a D.C. firm handling a case pending in D.C. As both sides appear to agree on this point, we will apply D.C. law. *See Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 626 n.24 (D.C. Cir. 2017).

A

To state a legal-malpractice claim under D.C. law, a plaintiff must plausibly allege that the defendant served as the plaintiff's attorney, the defendant breached a duty of reasonable care, and the breach "resulted in, and was the proximate cause of, the plaintiff's loss or damages." *Martin v. Ross*, 6 A.3d 860, 862 (D.C. 2010). For an act to proximately cause an injury, the causal connection must be "direct and substantial," and the injury must be "foreseeable." *Convit v. Wilson*, 980 A.2d 1104, 1125 (D.C. 2009) (cleaned up). So, if "an intervening act not reasonably foreseeable (sometimes referred to as a 'superseding cause') breaks the chain of causation," there can be no liability. *Seed Co. Ltd. v. Westerman, Hattori, Daniels & Adrian, LLP*, 961 F.3d 1190, 1196–97 (D.C. Cir. 2020) (applying D.C. law) (cleaned up).

The foreseeability requirement does not demand the defendant to have "foreseen the precise injury" suffered by the

10

plaintiff or have "notice of the particular method in which a harm would occur," so long as "the possibility of harm was clear to the ordinary prudent eye." *District of Columbia v. Harris*, 770 A.2d 82, 92 (D.C. 2001) (cleaned up). Stated another way, the harm is foreseeable if it is "the natural and probable consequence of the" negligence alleged. *Lacy v. District of Columbia*, 424 A.2d 317, 320 (D.C. 1980). The defendant "need not have foreseen the precise injury." *Spar v. Obwoya*, 369 A.2d 173, 177 (D.C. 1977) (cleaned up).

"Proximate cause is generally a factual issue to be resolved by the jury." *Majeska v. District of Columbia*, 812 A.2d 948, 950 (D.C. 2002) (cleaned up). It "becomes a question of law" when, but only when, no jury could make a "rational finding of proximate cause." *Id.* (cleaned up); *see Seed Co.*, 961 F.3d at 1197. The D.C. Court of Appeals has said that such cases are "exceptional." *See*, *e.g.*, *Nat'l Health Lab'ys v. Ahmadi*, 596 A.2d 555, 560 (D.C. 1991); *Hill v. McDonald*, 442 A.2d 133, 137 (D.C. 1982).

B

The district court dismissed the Botvins' complaint on the ground that, as a matter of law, the harm it alleged was not sufficiently foreseeable. In this procedural posture, the dispositive question is whether a jury could make a rational finding of foreseeability based on the facts as alleged. We do not consider whether the alleged facts would compel a finding of foreseeability, or even whether a wise jury should find foreseeability. We hold only that a jury *could* rationally find that the plaintiffs' reduced recovery was a foreseeable result of the alleged negligence of their former lawyers.

The Botvins posit that missing out on the chance to satisfy a judgment is the kind of harm one would expect from negligently delaying its acquisition. They contend that,

11

because collection opportunities come and go, a jury could rationally conclude that the natural and probable result of failing to obtain a judgment for several years is that some of those opportunities will be lost.

Regardless of whether this reasoning always holds true, it might apply in the context of terrorism judgments against Iran. Once the Antiterrorism and Effective Death Penalty Act of 1996 allowed lawsuits against foreign sovereigns for supporting terrorism, Pub. L. No. 104-132, § 221(a), 110 Stat. 1214, 1241, more and more victims of Iranian-sponsored terrorism have obtained such judgments.  By 2016, Iran had racked up a $56 billion tab of unpaid judgments, which was around six times what it owed in 2008.  *See* Application Instituting Proceedings (Iran v. United States) (June 14, 2016), http://www.icj-cij.org/files/case-related/164/19038.pdf; *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 58 (D.D.C. 2009).  That amount has almost certainly grown in the meantime, with victims continuing to obtain large judgments and Iran still refusing to pay. *See*, *e.g.*, *Roth v. Islamic Republic of Iran*, No. 1:19-cv-02179, 2023 WL 3203032, at *5 (D.D.C. May 2, 2023) ($629 million); *Fuld v. Islamic Republic of Iran*, No. 20-cv-2444, 2024 WL 1328790, at *20 (D.D.C. Mar. 28, 2024) ($191 million); *Stearns v. Islamic Republic of Iran*, No. 17-cv-131, 2024 WL 1886645, at *6 (D.D.C. Apr. 30, 2024) ($1.6 billion).

A natural inference from this ever-increasing number of judgments is that there will be ever-increasing competition to satisfy judgments when and if attachable Iranian assets surface. And given the scarcity of available Iranian assets, creditors may need to be ready to attach them at a moment's notice.  It may be prudent, therefore, for creditors' lawyers to promptly secure judgments against Iran in order to be prepared if an opportunity to attach arises.

12

The facts alleged here fit the pattern. While the Botvins' litigation was pending, other judgment creditors discovered the Bank Markazi account, and more than 1,000 of them moved quickly to satisfy their judgments before the money ran out. Moreover, the defendants in this case represented at least one group of these creditors. In March 2010, they filed an attachment notice against the account on behalf of those victims of Iranian-sponsored terrorism. App'x 22, 25. Yet even after that filing, the defendants still submitted two allegedly negligent default-judgment motions. Given their actual knowledge of the Bank Markazi account, and their experience in dealing with collection challenges associated with suits against Iran, we think a jury could reasonably find that these lawyers would have "reason to believe that" the delayed entry of default judgments would cause a loss of enforcement opportunities against the attachable Iranian assets in the account. *Seed Co.*, 961 F.3d at 1197.

For these reasons, the question of foreseeability in this case raised a jury question on the facts as alleged.

C

Instead of asking whether the type of harm that the plaintiffs suffered was foreseeable, the district court required foreseeability as to the precise manner in which the harm occurred. Here is what the court required to be foreseeable:

> (1) a substantial cache of U.S.-based Iranian assets would be located; (2) other plaintiffs also seeking to execute their judgments against Iran would devise a novel privately-negotiated settlement agreement; (3) a delay in securing a judgment would cripple the Botvin Family's effort to participate in the settlement; (4) the judge overseeing the settlement agreement would allow the Botvin Family to participate in the

13

settlement; (5) Congress would pass an "unusual statute," *Bank Markazi,* 578 U.S. at 215, removing the legal barriers to securing the assets; (6) the statute would be upheld on appeal; and (7) the Botvin Family would ultimately have recovered more than they did from the U.S.V.S.S.T. Fund.

*Estate of Botvin*, 2022 WL 4482734, at *11. Because the lawyers could not foresee each step in this long string of events, the court held as a matter of law that the complaint had not alleged the foreseeability element of proximate causation. *Id.*

The district court required too much specificity. Under D.C. law, only the *type of harm* must be foreseeable, not "the particular method" by which the plaintiff will be harmed. *Harris*, 770 A.2d at 92. For instance, it is enough for a landlord to know of criminal incidents in or around the rental property at issue, even if there was "only one assaultive crime" in the precise area where the plaintiff was assaulted. *Spar*, 369 A.2d at 177. And it is enough for a bar to know that serving alcohol to a visibly intoxicated patron risks injury to innocent bystanders, even if it could not foresee that an assault victim would hit his head and die. *See Casey v. McDonald's Corp.*, 880 F.3d 564, 567–78 (D.C. Cir. 2018).

A medical-malpractice case, *District of Columbia v. Perez*, 694 A.2d 882 (D.C. 1997), illustrates this point in the context of professional liability. A hospital declined to admit a pregnant Rosa Perez, who appeared ill and showed signs of jaundice. *Id.* at 883–84. After it finally did, Perez died from a rare fatty liver disease. The hospital argued that the death was unforeseeable as a matter of law "because fatty liver disease is so rare." *Id.* at 885–86. The D.C. Court of Appeals rejected that contention. It explained that although the hospital could not foresee that Perez had fatty liver disease, it could foresee

14

that "some injury" might occur when the hospital failed to admit her. *Id.* at 886. And that was enough to support a jury verdict that the hospital's negligent failure to admit and treat Perez in time was a proximate cause of her death. *See id.* So too here: Although the lawyers could not have known in advance all the particulars and timing of the Bank Markazi settlement, it would be enough for a jury to conclude that they should have foreseen that a years-long delay in obtaining default judgments against Iran would cause the Botvins to miss out on satisfaction opportunities in the relevant, hyper-competitive enforcement environment.

In reaching the opposite conclusion, the district court relied on *Seed Co.* and *Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP*, 68 A.3d 697 (D.C. 2013). Neither case provides enough for the defendants to prevail.

*Seed Co.* involved a fact pattern starkly different from the one alleged here. There, we held as a matter of law that a lawyer who gave a client bad advice about its claim against one party (Westerman) did not proximately cause the client's loss of a separate claim against a different party (Kratz). 961 F.3d at 1196–97. We explained that foreseeability was lacking because the lawyer "had no reason to believe that, by advising Seed about pursuing a malpractice claim against *Westerman*, Seed would rely on that advice in deciding when to bring a malpractice claim against *Kratz*." *Id.* at 1197. To reinforce this conclusion, we elaborated that another law firm had taken over pursuing the claim against Kratz, and its mistakes were a more direct cause of the client's losing that claim. *See id.*

*Seed Co.* supports our analysis here. Applying the governing standards of D.C. tort law set forth above, *Seed Co.* focused its foreseeability analysis on a relatively general type of harm: Regardless of any particulars about how the bad

15

advice might have caused a lost claim, our overarching point was a broader one that clients receiving advice about one matter do not generally rely on it in making decisions about a different matter handled by different counsel and involving a different counter-party. 961 F.3d at 1197. Here, in contrast, counsel undertook their allegedly negligent acts in the same matter in which plaintiffs allegedly suffered harm—lawsuits by the Botvin family and estate arising from the death of Yael Botvin in a 1997 terrorist attack sponsored by Iran. No other law firm was involved. And the lawyers' experience with obtaining and enforcing judgments against Iran—including their specific involvement with the Bank Markazi account—could have given them "reason to believe" that any negligent delay in obtaining the default judgments would result in lost enforcement opportunities. *Id.* In sum, *Seed Co.* recognized that a lawyer cannot necessarily foresee all the harm or reliance that may result from his malpractice; but here a jury could conclude that the lost enforcement opportunity related to the Bank Markazi account was foreseeable given the lawyers' knowledge of the account and their experience in litigating cases involving Iran.

*Pietrangelo* involved a wildly speculative causal claim. The plaintiff in that case, James Pietrangelo, lost a constitutional challenge to a federal statute restricting military service by homosexuals. *Cook v. Gates*, 528 F.3d 42 (1st Cir. 2008). Pietrangelo filed a petition for certiorari opposed by his former counsel, WilmerHale. Pietrangelo argued that "'but for' WilmerHale's filing, the Supreme Court would have granted certiorari, found in his favor on the merits, and remanded the case to the federal district court, which would have ordered Pietrangelo's reinstatement into the military." *Pietrangelo*, 68 A.3d at 710. The D.C. Court of Appeals affirmed the dismissal of Pietrangelo's complaint as resting on too much "compound speculation" to state even a plausible

16

claim of but-for causation. *See id.* (Pietrangelo "cannot demonstrate that 'but for' WilmerHale's filing he would have achieved such a result"). And who could quarrel with that assessment? Grants of certiorari are hard to come by, and Pietrangelo's *pro se* petition for certiorari—affirmatively opposed by eleven of the twelve service members who were his co-plaintiffs and co-appellants below, and who eventually retained Supreme Court counsel besides WilmerHale—was hardly a promising exception.

In contrast, this case involves no such speculation about hypothetical outcomes of longshot filings. The Botvin estate and family *did* obtain large default judgments against Iran, and all other plaintiffs with such judgments *did* obtain pro rata shares of the Bank Markazi account. Calculating what would have been the Botvin share of that account, had the estate and the family members obtained their default judgments without unusually long delays, is a simple matter of arithmetic. The only but-for question here is whether the complaint plausibly alleged that attorney missteps caused enough delay to make a difference. The district court correctly answered yes to that question. *See Estate of Botvin*, 2022 WL 4482734, at *10–11. And before this Court, the defendants do not even contest that ruling as to but-for causation.

In short, this was not the exceptional case where there were "absolutely no facts or circumstances from which a jury could reasonably have found that the appellees were negligent and that such negligence was the proximate cause of the injury." *Speights v. 800 Water St., Inc.*, 4 A.3d 471, 475 (D.C. 2010) (cleaned up). Accordingly, on the facts as alleged, the question of proximate cause was one for the jury to decide.

17

III

The lawyers ask us to affirm on the alternative ground that any of their mistakes would be protected by the doctrine of judgmental immunity, which forecloses malpractice liability for "an informed professional judgment made with reasonable care and skill." *Biomet Inc. v. Finnegan Henderson LLP*, 967 A.2d 662, 668 (D.C. 2009).

We decline to consider this question, which the district court did not reach. Our "normal rule" is to remand where necessary for the district court to address issues in the first instance. *Liberty Prop. Tr. v. Rep. Props. Corp.*, 577 F.3d 335, 341 (D.C. Cir. 2009). Of course, we have discretion to "affirm on different grounds" than those resolved below. *United States ex rel. Settlemire v. District of Columbia*, 198 F.3d 913, 920 (D.C. Cir. 1999). But doing so here, with only minimal briefing on the issue, would be inadvisable.

IV

For these reasons, we reverse the judgment dismissing the complaint and remand for further proceedings consistent with this opinion.

*So ordered.*